UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARCUS ANTHONY MICOLO,

                          Plaintiff,          **No. 6:15-cv-06374(MAT)**
                                              **DECISION AND ORDER**

          -vs-

JAMES H. FULLER, ROBERT M. MOSKO,
RICHARD CIOFFA, JEFFREY L. BURRI,
WILLIAM H. SEIDEL, LAWRENCE R.
BROWN, A GARDNER, M MALTESE, C.J.
ROBERTS, D KLINE, G SULLIVAN, C
GARDNER, RONALD DEWBERRY, MICHAEL
SHEAHAN, PAUL D. SABIN, B JONES,
SALOTTI, JENSEN,

                          Defendants.

## INTRODUCTION

Proceeding <u>pro se</u>, inmate Marcus Anthony Micolo ("Micolo" or "Plaintiff") instituted this action pursuant to 42 U.S.C. § 1983 against the defendants, who are all employees of the New York State Department of Corrections and Community Supervision ("DOCCS"). The following defendants have moved for summary judgment in lieu of answer: Nurse Jones, Nurse Practitioner Salotti, Nurse Administrator Jensen, Criminal Investigations Unit ("CIU") Officer C.J. Roberts and Officer Rehabilitation Counselor ("ORC") Robert Kline, Psychologist II Garry Sullivan, Chaplain Ronald Dewberry, Corrections Officer Paul Sabin, and Superintendent Michael Sheahan.

-1-

## FACTUAL BACKGROUND

The precipitating event in this case was a use-of-force incident that occurred during a cell extraction of Plaintiff on January 29, 2015, at Five Points Correctional Facility ("Five Points"). Plaintiff's supporting allegations against the moving defendants cover a number of disparate topics. To avoid unnecessary repetition, the facts pertinent to the alleged constitutional violations will be set forth below in the sections addressing the various defendants' arguments in favor of summary judgment.

## GENERAL LEGAL PRINCIPLES

### I.   42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish the following elements: (1) conduct attributable at least in part to a person acting under color of state law, and (2) deprivation, as the result of the challenged conduct, of a right, privilege, or immunity secured by the Constitution or laws of the United States. Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993). The § 1983 plaintiff must adequately demonstrate "personal involvement of defendants in alleged Constitutional deprivations." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). "Personal involvement of a supervisory official may be established 'by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through

a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.'" <u>Johnson v. Newburgh Enlarged School Dist.</u>, 239 F.3d 246, 254 (2d Cir. 2001) (quoting <u>Colon</u>, 58 F.3d at 873) (alterations in original)).

## II.  Summary Judgment Standard

Summary judgment may be granted only when the moving party demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party bears burden of demonstrating that there is an absence of evidence to support the non-moving party's case. <u>Celotex Corp</u>, 477 U.S. at 323. When the movant has met this burden, Rule 56(e) provides that the non-moving party "may not rest upon the mere allegations . . . [of his] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). Rule 56(c) further requires the entry of summary judgment against a party who fails to make a

showing sufficient to establish the existence of an element essential to his case and upon which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

The "mere existence of a scintilla of evidence" supporting the non-moving party's cause is insufficient. Anderson, 477 U.S. at 252. The non-moving party may not rely on evidence that is merely colorable, conclusory, or speculative but must come forward with "concrete evidence from which a reasonable jury could return a verdict in [his] favor." Id. at 256.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.   Claims Against Nurse Salotti, Nurse Jones, and Nurse Administrator Jansen

#### A.   Medical Treatment on January 29, 2015

Plaintiff alleges that following the cell extraction and use-of-force on January 29, 2015, he was taken to the Facility's medical unit and examined by Nurse Jones ("Jones"), Nurse Kristin M. Salotti ("Salotti"), and Nurse Administrator Robert Jansen ("Jansen"). Jones examined Plaintiff and noted a 1-inch laceration above his left eyebrow; a 3-inch laceration to right side of Plaintiff's face, across the temple into the hairline; a 3-inch area of abrasion to left mid-back; and a ½-inch abrasion to the inside of the right wrist. Plaintiff states that he informed Salotti and Jansen that he had undergone facial surgery in 2004, when "two titanium plates were put in his face." (Complaint ("Comp.") ¶ 101). Plaintiff complained of facial pain and asked for

-4-

a "cat-scan [sic] to see if any significant damage" had been done; this request was denied by Salotti and Jansen. (Id. ¶¶ 102-03).

After Plaintiff's wounds were cleaned, Salotti offered to "administer sutures or [to] glue the injury closed" over his left eye, but Plaintiff did not trust her and refused. (Comp. ¶ 112). Salotti then left the room. Plaintiff states that he would have accepted placement of "terry strips," which Salotti allegedly mentioned during the examination, in lieu of sutures or glue, and complains that Salotti failed to utilize "terry strips." (Id. ¶ 113).

Plaintiff also complains that Salotti and Jansen did not inquire about any other injuries "other than . . . what they wanted to see." (Id. ¶ 107). He also complains that he was experiencing lower back pain in the area where he had undergone lumbar surgery in 2014, and that Salotti and Jansen erroneously denied his request for a "cat-scan" of his back. He asserts that Salotti and Jansen failed to clean lacerations he had sustained on his ankles, right hand, and back, (Id. ¶¶ 114-15), but this is belied by the treatment note and Salotti's declaration. Plaintiff did not inform Salotti, Jansen, and Jones about any other injuries.

"To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that he or she had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need." Dallio v.

Hebert, 678 F. Supp.2d 35, 60 (N.D.N.Y. 2009) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998); emphases in original). There are thus two components to a deliberate indifference claim: the inmate must have a medical need which is objectively serious, and the defendant must have a state of mind which is subjectively culpable.

The "sufficiently serious" standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain[,]" Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (cited with approval in Hathaway, 37 F.3d at 66). Here, even accepting as true the existence of all of the injuries alleged by Plaintiff in his Complaint, and not just those that are reflected in the medical record,[1] Plaintiff has failed to establish a genuine issue of material fact as to whether he suffered from a sufficiently serious medical need. See Dallio, 678 F. Supp.2d at 60 ("Crediting Plaintiff's version of his injuries, the evidence shows that he suffered two black eyes, bruising in his kidney area on his left side, kick marks and open lacerations on his knees, bruising and red spots on his thigh, lacerations on his arms and wrists, a headache, and numbness in his hands and fingers. None of these are conditions of urgency that may produce death, degeneration, or

---

[1]     Plaintiff alleges additional injuries as follows, and complains that they were not addressed or included in his medical records: facial swelling including a blackened left eye; broken blood vessels in his face and left eye which resulted in blood loss; "possibly fractured" ribs; increased lower back pain; facial pain in "eye and TMJ area"; pain in his left ring finger; lacerations to his back, ankles, right hand; and bruises on his back. (See Comp. ¶ 175(a)-(l)).

extreme pain. Although Plaintiff characterizes the bruise to his kidney area as evidence of internal bleeding, there is no evidence before the Court that Plaintiff was, in fact, internally bleeding.") (internal citations to record omitted; collecting cases regarding similar conditions not sufficiently serious to impose Eighth Amendment liability). Significantly, Micolo did not mention having "possibly fractured ribs" to Jones, Salotti, or Jansen. However, he asserts that he did mention other issues, such as the fact that he had facial surgery in 2004, and that he was having facial and back pain. Plaintiff's failure to mention the existence of certain alleged injuries, while affirmatively referring to others, undermines his contention that the alleged injuries omitted from the medical records were sufficiently serious for Eighth Amendment purposes.

Even assuming _arguendo_ that Micolo did suffer from one or more sufficiently serious medical needs, there is no genuine issue of fact regarding the subjective component of the test, which "requires more than negligence [on the prison official's part], but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66 (citing Farmer v. Brennan, 511 U.S. 825, ----, 114 S. Ct. 1970, 1978 (1994)). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at ----, 114 S. Ct. at 1979). There is simply no evidence that Jones, Salotti, or Jansen acted (or failed to act) in a manner evincing "culpable recklessness[,]" i.e., a "conscious disregard of a substantial risk of serious harm[,]" Hathaway, 99 F.3d at 553 (citations omitted), to Plaintiff.

First, Jones is barely mentioned in the Complaint; the only omission attributed to Jones is a failure to record all of Plaintiff's alleged injuries in the treatment note. However, this alleged omission does not amount to a constitutional violation. See, e.g., Bloomfield v. Wurzberger, No. CIVA908CV619 GLS/RFT, 2009 WL 3335892, at *5 (N.D.N.Y. Oct. 15, 2009) ("The filing of a false entry in medical records, without more, does not constitute a constitutional violation.") (citing Benitez v. Locastro, No. 9:04-CV-423, 2008 WL 4767439, at *11 (N.D.N.Y. Oct. 29, 2008) (allegation that defendants falsified plaintiff's medical records did not state a valid § 1983 claim); other citation omitted).

Turning to Salotti and Jansen, the Court finds that their declarations demonstrate that there is no genuine issue of material fact regarding their state of mind. Salotti, under Jansen's observation, examined Plaintiff, cleaned his facial wounds with saline solution, and offered to provide sutures or glue for the 1-inch laceration above his left eyebrow, which Plaintiff refused.

Because Plaintiff refused sutures or glue, Salotti applied triple antibiotic ointment and appropriate dressings (bandages and tape). "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (citing Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) (district court abused its discretion by specifying in detail system of dental care to be provided to state prisoner instead of using corrections department's plan as its guide subject to minor modifications)). "Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." Chance, 143 F.3d at 703 (citing Estelle v. Gamble, 429 U.S. at 105–06 ); see also Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

Here, the Court is presented with a "mere disagreement" over the proper treatment plan. Plaintiff was offered what Salotti stated was the optimal treatment (sutures or glue) for his facial laceration, but he declined it. Salotti avers that the treatment Plaintiff chose (dressing and tape) did not subject him to a risk

of degeneration, death or extreme pain; at worst, it potentially lengthened his recovery period from about 5 days to 7-to-10 days, and increased the likelihood of scar formation. (See Salotti Decl. ¶¶ 10-14).[2] On the record before the Court, no rational jury could find that Jones, Jansen, and Salotti knew of, and nonetheless disregarded, an excessive risk to Plaintiff's health. See id. On the present record, Plaintiff has failed to raise a genuine issue of material fact that Salotti and Jansen were deliberately indifferent to any of Plaintiff's medical needs.

To the extent that Plaintiff contends that he needed to be taken to a hospital for a computed topography ("CT") scan and sutures, these claims are without merit. First, Plaintiff has failed to raise an issue of fact regarding Salotti's qualifications to administer sutures. Second, it is evident from the record that a CT scan not medically necessary since Plaintiff's laceration, which was treated with bandages, antibiotic ointment, and tape, healed without incident. Moreover, the other injuries of which Plaintiff complained likewise appear to have healed without any complications, based on the medical records provided to the Court.

Finally, to the extent that Plaintiff complains that his pain complaints were not adequately addressed, and that Salotti illegally disobeyed a purported "no crush" order for his pills, the

---

[2]     There is no allegation, however, that Plaintiff was left with any type of  disfiguring scar.

Court finds that Plaintiff has failed raise any genuine issues of material fact. First, Plaintiff has not raised an issue of fact that there was a "no crush" order for his pills. Second, Salotti indicates that as part of the treatment provided on January 29, 2015, Plaintiff was given Neurontin and Naprosyn for pain management. (See Salotti Decl. ¶ 17). However, Plaintiff's Neurontin was discontinued on February 10, 2015, after he refused, on four occasions over the course of eight days, to take the pill because it was in crushed form. (See id. ¶ 18). Salotti states that the pill was crushed to prevent Micolo from "cheeking, hoarding, and [engaging in] potentially suicidal behaviors." (Id. ¶ 18). Again, viewing the allegations in the light most favorable to Plaintiff, the Court is presented with, at the very most, a "mere disagreement" over the proper treatment plan; however, "as long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d at 703 (citation omitted).

The deliberate medical indifference claims against Jones, Salotti, and Jansen based on the treatment they provided on January 29, 2015, are dismissed as a matter of law. Jones, Salotti, and Jansen are dismissed as defendants in this action.

**B.   Medical Treatment after January 29, 2015**

To the extent that Plaintiff complains of inadequate medical

care after January 29, 2015, Defendants argue that Plaintiff failed to exhaust his administrative remedies as to these claims. Alternatively, Defendants assert, the claims are without merit.

The Prison Litigation Reform Act of 1995 ("PLRA") states in relevant part that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Supreme Court  recently held that, "aside from the 'significant' textual qualifier that 'the remedies must indeed be "available" to the prisoner,' there are 'no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."'" Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016) (quoting Ross v. Blake, --- U.S. ----, 136 S. Ct. 1850 (2016)).[3]

DOCCS maintains a three-tiered administrative review and appeals system for prisoner grievances. See N.Y. COMP. CODES R. & REGS. ("NYCRR") tit. 7, § 701.5. Completion of all three levels is

---

[3]

Ross abrogated the "special circumstances" exception to the PLRA's exhaustion requirement articulated by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 689-91 (2d Cir. 2004).

a prerequisite to a Section 1983 action in federal court. See Porter, 534 U.S. at 524. The third and final level involves an appeal by the inmate of the facility superintendent's written decision to DOCCS' Central Office Review Committee ("CORC"). See NYCRR tit 7 § 701.5(d).

The records submitted by Defendants show that over the course of his incarceration in DOCCS, Plaintiff has appealed approximately 50 grievances to the CORC. With regard to the time-frame relevant here, Plaintiff completed the required three-level review with regard to 13 grievances filed between December 2014, and March 2015, at Five Points Correctional Facility. Six of these grievances were filed after the use of force incident on January 29, 2015. However, none of the grievances filed on or after January 29, 2015, at Five Points pertained to medical care received by or denied to Plaintiff. (See Declaration of Jeffrey Hale ("Hale Decl.") ¶¶ 3-6 & Exhibit A).

In his opposition papers, Plaintiff cites only two grievances: FPT-30009-15, which addresses medical care provided on January 29, 2015, and as to which Defendants have not raised an exhaustion defense; FPT-29966-15, which does not address medical care, (see Hale Decl., Ex. A, p. 1); and FPT-29960-15, which the records show was not exhausted (see Hale Decl., Ex. A, p. 1). See Plaintiff's Reply to Defendant's Notice of Motion, Etc. ¶¶ 9-14. Plaintiff argues that grievance FPT-29960-15 should be deemed

exhausted because there was a "breakdown in the process" occasioned by his being transferred to Marcy Correctional Facility ("Marcy"). However, Plaintiff has not raised a genuine issue of material fact given the fact that he never attempted to appeal the grievance when he was at Marcy, despite receiving a letter from the Commissioner's Office advising him to work with Marcy's grievance coordinator to address any problems he was having, and the fact that he grieved to exhaustion numerous grievances while at Marcy (see Hale Decl., Ex. A, pp. 1-2).

Based on its examination of the record, the Court agrees that Plaintiff has failed to exhaust his administrative remedies as to any claims of inadequate medical care provided after January 29, 2015. Plaintiff has not made the required showing that administrative remedies were not, in fact, available to him. To the contrary, Plaintiff was well aware of how the grievance process worked within DOCCS, having employed it on many previous occasions. Moreover, there is no basis in the present record on which Plaintiff could argue that Defendants should be estopped from raising an exhaustion defense with regard to any claims for inadequate care after January 29, 2015.

In any event, Plaintiff has no viable deliberate medical indifference claim with regard to care provided or denied after January 29, 2015, at Five Points. Plaintiff was seen approximately eleven times in the five weeks following the use of force incident,

but the records submitted by Defendants fail to establish the existence of injuries or conditions involving urgency, the risk of degeneration or death, or extreme pain. Plaintiff was offered Naprosyn and Neurontin for pain management regarding his resolving injuries from the use of force incident. He continued to take the Naprosyn through the time he commenced this action but, as noted above, he refused to take the Neurontin because the pills were crushed, per DOCCS' policy. He was also provided Tylenol packets on various occasions in response to his complaints of lower back pain. Any claims of deliberate medical indifference arising after January 29, 2015, are dismissed as unexhausted, and as without merit.

## II. Claims Against CIU Officer C.J. Roberts and ORC Robert Kline

In his Complaint, Plaintiff asserts that CIU Officer C.J. Roberts ("Roberts") and ORC Robert Kline ("Kline") "entered into conspiracy with Sgt. J. Fuller to cover up Fuller's wrongdoing against Micolo [during the cell extraction on January 29, 2015,] and provided material support to Fuller in going along with Fuller's scheme and falsify [sic] documents to say he was [present] when he never was. . . ." Comp. ¶¶ 136-37 (brackets in original).

The elements of a Section 1983 conspiracy claim are as follows: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

-15-

It is well settled that "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted).

Plaintiff has not alleged any facts suggesting the existence of any tacit or express agreement among Kline, Roberts, and Fuller to act in concert to violate Plaintiff's rights. The only allegation that possibly could be construed as an overt act in furtherance of a conspiracy alleged is that Roberts and Kline falsely stated, in their respective incident reports, that Fuller was present when, according to Plaintiff, he was not. However, it is well-settled that "[a] prison officer's falsifying of a report regarding an alleged violation of an inmate's rights does not, in itself, rise to the level of a constitutional deprivation, absent a showing that the officer was personally involved in the underlying incident." Kee v. Hasty, No. 01 CIV.2123(KMW)(DF), 2004 WL 807071, at *27 (S.D.N.Y. Apr. 14, 2004) (citing Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986) (affirming dismissal of claim against prison officer who, according to inmate, "filed a false misbehavior report which initiated the procedurally flawed

disciplinary hearing," because "[t]he filing of a false report does not, of itself, implicate the guard who violated it in constitutional violations which occur at a subsequent disciplinary hearing") (citing <u>Sommer v. Dixon</u>, 709 F.2d 173, 174 (2d Cir. 1983) (dismissing claim that prison officers "had engaged in a conspiracy to file false reports against him which, in his words, 'set' in motion a series of acts by others which defendants knew would also, cause others to inflict the constitutional injury to advocate and order segregated confinement which resulted in plaintiff's substantial loss and or destruction of both legal and personal property")). Plaintiff does not allege, and there is nothing in the record to suggest, that Roberts or Kline was personally involved in the cell extraction or subsequent events.

Plaintiff's allegations against Roberts and Kline fail to state any constitutional claims, including a claim for conspiracy to violate Plaintiff's constitutional rights. See <u>Sommer v. Dixon</u>, 709 F.2d at 174. Roberts and Kline are dismissed as defendants from this action.

## III.   Psychologist II Garry Sullivan

Plaintiff's sole allegations regarding Psychologist II Garry Sullivan ("Sullivan") appear in two paragraphs of the Complaint. Prior to the cell extraction on January 29, 2015, Fuller contacting OMH for assistance, which dispatched Sullivan to Plaintiff's cell. When Sullivan arrived, Plaintiff informed Sullivan that he would

only come out of his cell if "the Captain and Camera were present."
(Comp. ¶ 32). Plaintiff told Sullivan that he did not need
psychiatric services and that he had no intention of harming
himself or others. Sullivan then left the area. (Id. ¶ 33). In his
opposition papers, Plaintiff asserts for the first time that
Sullivan "worked with Fuller to contrive the process to make it
seem as if [he] had to come out of the cell for OBS.[4] Even if
Sullivan was ignorant to Fuller[']s intentions, Sullivan is still
part of the conspiracy." (Plaintiff's Declaration with Facts +
Legal Argument in Lieu of Memorandum of Law, pp. 6 of 13).

Again, as with his allegations against Roberts and Kline,
Plaintiff has not come forward with any facts suggesting the
existence of any tacit or express agreement among between Sullivant
and Fuller to act in concert to violate Plaintiff's rights. Indeed,
Plaintiff concedes that Sullivan may have been "ignorant" of
Fuller's wrongful intentions. That admission forecloses the
possibility of an agreement between Sullivan and Fuller to violate
Plaintiff's rights.

Plaintiff's allegations against Sullivan fail to state any
constitutional claims, including a claim for conspiracy to violate
Plaintiff's constitutional rights. See Sommer v. Dixon, 709 F.2d at
174. Sullivan is dismissed as a defendant from this action.

---

[4]
    The Court believes that by "OBS", Plaintiff here is referring to
observation in a mental health unit of the correctional facility.

## IV.  Carol Gardner, RN II

Plaintiff alleges that after Sullivan left the area, Carol Gardner, RN II ("C. Gardner"),[5] came to his cell and "asked him if he'd come out of the cell." (Comp. ¶ 34). Plaintiff informed her that he would do so, but only if "the captain and camera were on scene." (Id.). At that point, C. Gardner left the area.

Section 1915(e)(2)(B) of Title 28 U.S.C. provides in part that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal . . . (ii) fails to state a claim on which relief may be granted. . . ." 28 U.S.C. § 1915(e)(2)(B)(ii).  Although Defendants have not moved for summary judgment on behalf of C. Gardner, the Court will exercise its discretion to sua sponte dismiss the claims against C. Gardner pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. As was the case with Sullivan, Plaintiff's allegations against C. Gardner fail to state any constitutional claims, let alone a claim based on a conspiracy to violate Plaintiff's constitutional rights. See Sommer v. Dixon, 709 F.2d at 174. C. Gardner is dismissed as a defendant from this action.

## V.  Chaplain Ronald Dewberry

---

[5]     To avoid confusion with named defendant A. Gardner, the Court will refer to Carol Gardner as "C. Gardner".

Plaintiff's allegations regarding Chaplain Ronald Dewberry ("Dewberry") are nearly identical to those regarding Sullivan. Dewberry was sent to Plaintiff's cell prior to the extraction; Plaintiff informed Dewberry that he would not come out unless a captain and a videocamera were present; Dewberry then left the area and did not return. (See Comp. ¶ 35). In his opposition papers, Plaintiff asserts that Dewberry "allowed Fuller to use him to attempt to have [him] come out [of] the cell without the camera and captain present." (Plaintiff's Declaration with Facts + Legal Argument in Lieu of Memorandum of Law, pp. 7 of 13). For the reasons discussed above in Sections III and IV, these conclusory and vague allegations plainly fail to state any constitutional claim against Dewberry, much less a claim of conspiracy. Dewberry accordingly is dismissed as a defendant.

## VI. Corrections Officer Paul Sabin

Plaintiff alleges that Corrections Officer Paul Sabin ("Sabin") came to his cell, along with several other officers (non-moving defendants Mosko and Brown), to escort him to a disciplinary hearing on February 17, 2015. (See Comp. ¶¶ 159-167). While applying the handcuffs and leg restraints prior to allowing Plaintiff to exit his cell, Sabin allegedly applied them "to the last click available" which "caused [Plaintiff] pain." (Id. ¶ 162). Plaintiff, "knowing he'd be injured" if he left his cell, "told Sabin to remove the shackles and cuffs [be]cause he wasn't going to

the hearing." (Id. ¶ 164). Sabin replied, "[G]ood," and "jerked the shackle chain upwards, released the shackle and thereafter removed the cuffs." (Id. ¶ 165). Sabin then left the area. Plaintiff alleges that Sabin applied the cuffs and shackles in an excessively tight manner to purposely cause him pain, and deter him from attending his disciplinary hearing because Sabin knew "those shackles would cut [his] ankles again and the cuffs would cause [his] hands to go numb" and he "would be left in the cage in the hearing room for who knows how long." (Plaintiff's Declaration with Facts + Legal Argument in Lieu of Memorandum of Law, pp. 8-9 of 13).

When prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment,[6] "a court should consider both the 'objective' and 'subjective' components of an alleged violation[.]" Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994) (citing Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 999 (1992)). "The objective component relates to the seriousness of the injury; however, 'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'" Id. (quoting Hudson, 503 U.S. at ----, 112 S. Ct.

---

[6]
In their unpaginated memorandum of law, Defendants have relied on excessive force cases brought by non-prisoners, which are analyzed under the Fourth Amendment, rather than the Eighth Amendment. See Defs' Mem., Section VII. These cases therefore are not relevant to the Court's analysis of Plaintiff's claim.

at 997); footnote omitted, brackets in original). Thus, while the seriousness of the injury is "relevant to the Eighth Amendment inquiry, . . . [it] does not end it." Hudson, 503 U.S. at ----, 112 S. Ct. at 995). The Supreme Court in Hudson "specifically rejected the dissent's theory that an inmate must show serious injury in addition to the unnecessary and wanton infliction of pain." Davidson, 32 F.3d at 30 n. 1 (quoting Hudson, 503 U.S. at ----, 112 S. Ct. at 1001).

Plaintiff has adequately alleged the subjective component of an Eighth Amendment violation, and Defendants have not raised any argument regarding Sabin's subjective intent. Rather, Defendants argue that the objective component of an excessive force claim is lacking because Plaintiff "saw medical staff on the morning of February 17[, 2015] and did not complain of pain or injury to his wrist or legs." (Defs' Mem., Section VII (citing generally to Salotti Decl.)). However, Salotti does not state that she saw Plaintiff on February 17, 2015; indeed, her declaration does not mention February 17, 2015, at all. While there is a treatment note dated February 17, 2015, in the medical records attached to Salotti's declaration, the time that Plaintiff was seen by medical staff was 7 o'clock in the morning. This appears to have been prior to Plaintiff being summoned by Sabin for his disciplinary hearing. Thus, the absence of complaints in that treatment note about injuries to Plaintiff's wrists is not necessarily probative. At

this juncture, the Court cannot say that Defendants have sufficiently demonstrated their entitlement to summary judgment on this excessive force claim against Sabin. Accordingly, their motion to dismiss this claim is denied without prejudice with leave to renew.

## VII. Superintendent Michael Sheahan

Plaintiff alleges that Five Points Superintendent Michael Sheahan ("Sheahan") (1) participated in a conspiracy with Fuller by providing unspecified "aid" to him after the cell extraction on January 29, 2015; (2) did not arrange for feces in Plaintiff's cell to be cleaned; (3) did not lift the water-restriction order in response to Plaintiff's request; (4) denied his grievances pertaining to the cell extraction on January 29, 2015; (5) and did not order new photographs of Plaintiff's injuries. (See Comp. ¶¶ 142, 146, 150-158, 192, 200-203).

First, with regard to the alleged "aid" to Fuller in furtherance of a conspiracy, Plaintiff's Complaint contains "only conclusory, vague, or general allegations of conspiracy[,]" Sommer, 709 F.2d at 175, which "cannot withstand a motion to dismiss." Id. Plaintiff's claim of a civil rights conspiracy is dismissed as to Sheahan.

Turning to the second and third sets of allegations against Sheahan, Plaintiff asserts that he was placed on a water-deprivation order upon his return from the mental health

observation unit on February 3, 2015. He alleges he was not given any water from 12:00 p.m. that day to at least 10:30 p.m. on February 3, 2015. On the morning of February 4, 2015, Plaintiff had sewage in his toilet bowl. Furthermore, he asserts, he was not provided any water to wash up with, and was made to eat his breakfast and lunch in a cell in which there was sewage. (See Comp. ¶ 201). That day, while Sheahan and his executive team were making the rounds, Plaintiff showed Sheahan the sewage in his toilet and said he had not been provided water since 12:00 p.m. the previous day (February 3, 2015). Plaintiff states that Sheahan still did not cause Plaintiff's toilet to be flushed or for him to be provided with water. (Id. ¶ 202).

Defendants' sole argument in support of summary judgment is that Plaintiff has failed to state a conditions of confinement claim because he has not alleged (1) an "objectively, sufficiently serious . . . denial of the minimal civilized measure of life's necessities," and (2) a "sufficiently culpable state of mind" on the prison official's part. Farmer, 511 U.S. at 834 (internal quotation marks and citations omitted). The Court finds, contrary to Defendants' contentions, that Plaintiff has adequately alleged the objective component of a conditions of confinement claim. See McBride v. Deer, 240 F.3d 1287, 1291 (10th Cir. 2001) (vacating in part dismissal where the plaintiff alleged that he was forced to live "in squalor—more specifically, a feces-covered cell—for three

days") (cited with approval in <u>Willey v. Kirkpatrick</u>, 801 F.3d 51, 66 (2d Cir. 2015)). As to the subjective component, Defendants assert Plaintiff does not allege that he told Sheahan about the feces, merely alleges that Sheahan knew it was there. This appears to the Court to be a distinction without a difference and, in any event, Plaintiff's Complaint clearly alleges that he informed Sheahan about the sewage in his toilet while Sheahan and his team were doing rounds on February 4, 2015. (<u>See</u> Comp. ¶ 202 ("Micolo showed Sheahan the raw sewage in the toilet and complained that he had not been allowed any water. . . .")). The Court finds that Defendants have not established entitlement to dismissal of Plaintiff's conditions-of-confinement claim against Sheahan based on Sheahan's alleged failure to lift the water-deprivation order and cause his cell to be cleaned, despite being put on notice of these conditions by Plaintiff.

Fourth, Plaintiff's allegation that Sheahan improperly denied his grievances regarding the January 29, 2015, use-of-force incident, and the allegedly inadequate medical care provided on January 29, 2015, is insufficient to state a claim. <u>See</u> <u>Joyner v. Greiner</u>, 195 F. Supp.2d 500, 506 (S.D.N.Y. 2002) "The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance—which is all that is alleged against him—is insufficient to establish personal involvement or 'to shed any light on the critical issue of supervisory liability, and more particularly,

knowledge on the part of the defendant.'") (quoting Scott v. Scully, No. 93 Civ. 8777(HB), 1997 WL 539951, at *4 (S.D.N.Y. Aug. 28, 1997) (granting motion to dismiss claim against superintendent due to lack of personal involvement where inmate merely alleged that superintendent forwarded complaint letter and affirmed dismissal of inmate's grievance), abrogated on other grounds by Jenkins v. Haubert, 179 F.3d 19 (2d Cir. 1999)). It is well established that "absent some personal involvement by [the Superintendent of a DOCCS facility] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under Section 1983." Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987).

Finally, the Court turns to Plaintiff's fifth allegation against Sheahan. According to Plaintiff, Sheahan violated his constitutional rights by failing to order new photographs be taken of Plaintiff's injuries, after Plaintiff complained that the first set of photographs was unsatisfactory for him to use in connection with his grievances. These allegations fail to state a constitutional claim cognizable under Section 1983. See, e.g., Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address Torres's grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because Torres was not deprived of a protected liberty interest. Prison grievance procedures do not confer any substantive

right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment. . . . Torres does not have a protected liberty interest in having his grievances investigated at the level of thoroughness that he desires, and therefore he can not assert a due process claim as to such failures.") (citations omitted).

## PLAINTIFF'S MOTIONS FOR MISCELLANEOUS RELIEF

### I.  Motion to Compel Production of Video Evidence

Plaintiff has filed a motion to compel Defendants to produce the video evidence of the use-of-force incident. Plaintiff references the contents of the video at various points throughout his pleadings submitted in opposition to Defendants' motion for summary judgment. Defendants argue that since Plaintiff has already drafted and filed his opposition pleadings, he cannot argue that he requires the video to present facts critical to rebutting Defendants' summary judgment arguments. Defendants indicate, however, that if the Court finds it necessary to review the video evidence is necessary to reach a determination on the pending summary judgment motion, they will produce the video evidence to the Court for its in camera review. The Court finds that the video of the use-of-force incident is unnecessary for it to resolve the pending summary judgment motion; indeed, based on Plaintiff's own allegations, the moving defendants were not actually involved in the cell extraction and use-of-force incident. The Court

accordingly denies Plaintiff's motion to produce the video evidence without prejudice.

## II.   Motion to Compel Personal Service

Plaintiff also has moved to compel personal service of the Summons and Complaint upon DOCCS' employee, C. Gardner. This request is moot, in light of the Court's <u>sua</u> <u>sponte</u> dismissal of C. Gardner as a defendant due to Plaintiff's failure to state a cognizable constitutional claim against her.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied in part and granted in part; Plaintiff's Motion to Compel Production of Video Evidence is denied without prejudice; and Plaintiff's Motion to Compel Personal Service of C. Gardner is denied as moot.

Specifically, Defendants' Motion for Summary Judgment is **denied** to the extent that the excessive force claim against Sabin and the conditions of confinement claims against Sheahan remain pending; and it is granted to the extent that all other claims against Sheahan are **dismissed.** Furthermore, Defendants' Motion for Summary Judgment is **granted** to the extent that all claims against Jones, Salotti, Jansen, Sullivan, C. Gardner, Dewberry, Roberts, and Kline are **dismissed**, and these individuals all are **dismissed** as defendants from this action.

### ORDERS

Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt #31) is denied in part and granted in part, as specified in more detail below; and it is further

**ORDERED** that the excessive force claim based on handcuffing remains pending against Sabin; and it is further

**ORDERED** that the conditions of confinement claims against Sheahan based on the failure to have feces cleaned from Plaintiff's cell and to lift the water-deprivation order **remain pending**, but all other claims against Sheahan are **dismissed**; and it is further

**ORDERED** that all claims against Jones, Salotti, Jansen, Sullivan, C. Gardner, Dewberry, Roberts, and Kline are **dismissed**; and it is further

**ORDERED** that Jones, Salotti, Jansen, Sullivan, C. Gardner, Dewberry, Roberts, and Kline are **dismissed** as defendants from this action; and the Clerk of Court is directed to modify the caption accordingly; and it is further

**ORDERED** that Plaintiff's Motion to Compel Production of Video Evidence (Dkt #34) is **denied without prejudice**; and it is further

**ORDERED** that Plaintiff's Motion to Compel Personal Service of C. Gardner (Dkt #42) is **denied as moot** because, as indicated above, C. Gardner has been terminated as a defendant from this action.

**ALL OF THE ABOVE IS SO ORDERED.**

**s/ Michael A. Telesca**

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     October 28, 2016
              Rochester, New York